under advisement and we move now to case number 3, 24-2056, Joshua Harris v. W6LS, W6LS, USHERS, ENSO subgroup, and I'm going to turn things over to Mr. Wood for comment My name is Paul Croker, and I'm here today on behalf of the defendants, W6LS, Inc., and Caliber Financial Services, Inc., both of whom are wholly owned and operated economic arms of the Otoe, Missouri tribe. In this case, we are appealing the district court's denial of the defendant's motion to compel arbitration. In this case, there is no dispute, and the district court found that the parties entered into a contract, loan agreements, and that there was an arbitration agreement within those contracts that provided that the disputes at issue here that the plaintiffs have raised fall into the scope of those arbitration agreements. There is also no dispute, and the district court found that the broad delegation provisions clearly and unmistakably delegate all issues, including plaintiff's claims and all gateway issues, including arbitrability, enforceability, interpretation, and validity of the loan agreements and the arbitration agreements to the arbitrator. Therefore, the threshold issue for this court to decide is whether the broad delegation provisions are enforceable. That is who should decide plaintiff's claims and the gateway issues. We submit the delegation provisions are enforceable, and the gateway issues should be submitted to arbitration because there is nothing unusual or unique about the delegation provisions. The delegation language has been enforced by the Supreme Court and federal courts across the country. But counsel, when this was signed, when this delegation provision was agreed to, the tribal code that the provision is referring to, at least if I am reading the record correctly, didn't exist. The code was, the date that it became public and enforceable was after the signing of this agreement. So what were the plaintiffs agreeing to? Your Honor, are you referring to the contract code? Yes. So, Your Honor, there was tribal law in place regarding, there is a robust regulatory environment. There is a financial services law at the tribal law level that was put in place when the tribe entered into the business of making consumer loans. Now, to your point, the contract code was not in place at that time. There was, so how, what was the plaintiff agreeing to on choice of law, on how this was going to be decided? Sure, Your Honor. In this particular case, the governing law provision provides for federal law and for tribal law to be the governing law. And so as we look at this issue, when we are looking at the delegation provision, there is no issue as to whether or not there was a contract formed. The plaintiff's claims count on there being a contract formed. There is no dispute in the district court found there is contract formed. So we don't need to look to state law with regard to any sort of contract formation issues. As this court found, I believe in KFC, it is federal law rather than state law that determines who is going to decide the issues of the plaintiff's claims and the gateway issues. And so we don't need to look at any sort of state law or the tribal law for purposes of determining contract formation. But we are going to need to look at that when we say, okay, is the delegation clause, what is the delegation clause saying? And is the delegation clause itself unconscionable? And what was being agreed to? What was the choice of law? What was that contract code? It seems to me that at the time the plaintiff signed the arbitration agreement, including the delegation agreement, the contract code didn't exist. So you would have potentially some federal common law. But then the tribal law could come in after the time of the signing of the agreement and change the party's rights and how the delegation clause is to be interpreted. I would point out that the contract code has retroactive effect, which sovereigns can do. They can put in retroactive effect as the contract code. And here, there's nothing unique or odd about the contract code. It is formed after many other state type of contract codes. So there's nothing unusual for the arbitrator to rely upon when deciding any sort of issues. But I think what we're looking here really is whether or not the plaintiffs ever specifically challenged the delegation provision. And I submit to you that they did not. The challenges are to the arbitration agreement as a whole or to the loan agreement as a whole. The arguments that they raise are that the interest rate is outside of Illinois law. That's not a specific challenge to the delegation provision. They argue that the choice of law provision doesn't include Illinois law. That's not a challenge to the delegation provision. And they raise Illinois public policy. Again, that has no bearing on the delegation provision that's before this court. But when we looked at the record in regards to the opposition to the motion to compel Docket 33, in particular, there's some argument there at pages 11 and 12 where they suggest that the body of law that Judge Kollar is referencing permits enforcement of either the arbitration clause or the delegation clause, a negated application of both the agreement as well as the delegation clause in particular. And they also raised it again on page 12 in opposition to the motion to compel. And so what do we do to address those? Are you suggesting that those arguments were insufficient or not properly developed? Yes. I would submit to you that those are not specific challenges to the delegation provision. It has been held in Dunn in the 11th Circuit and Bryce in the 9th Circuit that a challenge to the choice of law provision as it is applied to the arbitration agreement as a whole is a challenge to the arbitration agreement as a whole and not a specific challenge to the delegation provision itself. And in Dunn, the 11th Circuit explained it's premature to resolve the choice of law challenges at the arbitration enforcement stage or at the delegation stage, that the choice of law question must be decided in the first instance by the arbitrator. And that's Dunn in the 11th Circuit, and that's quoting the Supreme Court, Vemar Segaros y Ria Segaros. It would also be improper for the district court to look downfield to say, well, what might happen if we enforce this choice of law provision? Might it avoid liability? And relying on Rent-A-Center, the 6th Circuit, the 9th Circuit, and the 11th Circuit have all held that an argument of this nature, that there might be speculating whether or not there might be liability avoided in arbitration, is improper, and it's not a specific challenge to the delegation provision itself as required by Rent-A-Center. So if we also look at other challenges that were made with regard to public policy, plans have said that the interest rates were outside of what is allowed by Illinois law, that the governing law provision doesn't include Illinois law. As this court held in KFC v. SNAP, public policy challenges to the agreement are a defense to enforceability of the agreement as a whole, and are delegated to the arbitrator. Again, all issues regarding enforceability here have been delegated to the arbitrator. If we look at the key here, too, is that when we get into arbitration, the plans will have the ability to raise all of these issues. It is very clear from the delegation provision that the arbitrator can consider any challenge based on any form of law, whether it be constitution, whether it be common law, whether it be statute, whether it be Illinois law. So there's no concern here that the plans will not be able to raise these challenges, including public policy under Illinois law, in arbitration. They have the opportunity to raise those. If I could speak a little bit to the effective vindication doctrine. This court cited to footnote 5 of Viking River, which is what the district court and what plans are relying upon to say that there's this huge sea change as to the effective vindication doctrine, and it's been expanded beyond federal law to include state law and protection of state statutory rights. This court cited that footnote in Rogers-Ragir as recognizing that the FAA only applies to the substantive validity and enforceability of the provisions governing the arbitration itself and not any other provisions in the contract. It didn't cite it for the proposition that somehow the effective vindication doctrine has been wildly changed in a footnote to a Supreme Court opinion that doesn't even reference the doctrine by name. And if we look at Viking River, in that case, that again is what the district court and the plaintiffs rely upon is this huge sea change as to the doctrine. In that case, the Supreme Court held that the defendant could compel arbitration of the state law claims and dismiss the plaintiff's California representative claims. So, in a case where the Supreme Court is enforcing an arbitration agreement, it certainly isn't of state law claims. It certainly isn't finding that there is a huge shift in the doctrine. If that would have been the case, then the court would have applied the doctrine. The case would have moved forward in litigation in a court, not in arbitration. If there's no other questions, I'll reserve the rest of my time. All right. Thank you, counsel. Thank you.  May it please the court, counsel. I'm Daniel Edelman representing the plaintiffs. The court was concerned about the logical basis for the delegation provision, where the arbitrator is directed to apply tribal law and applicable federal law. In the Rogers-Rosier v. American Queen decision, this court made it clear that state contract law is what creates contracts. The Federal Arbitration Act prohibits state law from discriminating against arbitration contracts, treating them less favorably than other contracts. Here, however, the defendants provide that state law doesn't have any application. Can tribal law be substituted? No. Under this court's Jackson v. Payday decision and under the Supreme Court's Plains Commerce Bank decision, an Indian tribe does not have authority to prescribe rules of law governing transactions which do not take place on the reservation with nonmembers. Furthermore, Jackson holds that it's a matter of subject matter jurisdiction and that it applies to both adjudicative, administrative, and legislative acts by the tribe. So tribal law, which was not issued at the time the loans were obtained, but whatever its content cannot be applied in this case. These loans do not occur on the reservation. While the lender purports to be wholly owned by a tribe, the tribe is in Oklahoma. The actual premises of the lending activities are in Kansas, Missouri, and Texas. The computers that the Illinois resident communicates with in the course of obtaining the loan are in California. What is in Oklahoma is a private mailbox. The reason this is done is that the loan... And counsel, where in the record are you getting those locations? Those were alleged in the complaint. At no time did the defendant deny that those are the locations. They were based on things like job advertisements placed by the defendants, which indicate where the place of work, the intended place of work is. It's not on the tribe, on the reservation. Anyway, the reason all this is done is that these loans are made at just under 500%. The Predatory Loan Prevention Act caps rates at 36% if you have a bank or credit union charter or license from the state of Illinois. The rate is 9% if you do not have one of those. The statute specifies in geographic terms... What do we do, though, Mr. Elman? The suggestion by counsel is that we can't get to this question until we determine whether or not the court should have or erred in answering this question without sending this to arbitration. Under the prospective waiver doctrine, I believe that this court can. The Arbitration Act does not authorize what amounts to an advance waiver of rights under, in this case, Illinois law, under RICO, because RICO criminalizes the making of an unlawful debt. Is there any circuit that agrees with your reading, extending Vika Rivers Cruz to that of state rights, substantive rights? I believe it was, the Second Circuit did so in the Otoe, Missouri case against the State Department of Financial Institutions. I'm sorry, counsel, can you give me that citation? It's a little hard for me to pick you up as far as... Otoe... It is 769 F. 3rd 105. All right. Where the same tribe sought to enjoin the New York Department of Financial Services from enforcing the New York laws against usury. I think that when one looks at the, as the court below did at the briefs in the Viking River case, it is clear that the Supreme Court was applying the prospective waiver doctrine to all statutory rights, state and federal, which in this case are inextricably intertwined because of the criminalization by federal law of transactions that are usurious under state law, where it's at least twice the lawful rate and made by somebody in the business of making such loans. The defendant's argument would basically eliminate the prospective waiver doctrine, and I believe that Judge Jenkins was correct in her application of it. Going back to the substance of the delegation argument, most courts, Dingres, Hengel, have held that it is permissible to challenge the delegation provision on the same grounds as the arbitration agreement as a whole, at least where the problem is prospective waiver of rights. In addition, we have tribal law which does not exist, which cannot be, cannot constitutionally be applied by a tribe to people who are obtaining loans, in Illinois, who are obtaining loans over the internet from businesses which are nowhere near the reservation. The loans are not made to members of the tribe. The purported law does not meet the restatement definition of law at all. The restatement requires that the law be applied by the adjudicated authorities in the territory issuing the law in the ordinary course. Here we have the issuance of a piece of paper, the sole purpose of which is to be used against residents of Illinois and other states, and to authorize the commission of acts against them which are either illegal or outright criminal. That's not something that, this is just not tribal law in any meaningful sense. The defendants relied on a couple of cases. Bryce v. Haynes was a split decision that was vacated upon the grant of rehearing and then settled. I submit that this is not entitled to significant weight as recognized by the court below. Dunn v. Global Trust Management is an unpublished 11th Circuit decision. I believe it is the minority view. And most importantly involved a totally different statute. The Florida statute in that case is quite different from the Predatory Loan Prevention Act. The PLPA specifies what transactions it applies to. It specifically applies to loans made over the internet to Illinois residents. It states that such loans at more than 36% are void and that the lender has to give back whatever money they receive pursuant to such a law. The defendants are basically reaching for concepts which have legitimate purposes, but are trying to apply it to a completely illegitimate series of transactions. Starting with the proposition that an arbitrator should be applying tribal law which at the time of the loan didn't exist and cannot, even if it did exist, cannot be applied under the circumstances of this case. The decisions, particularly from the Second and Third and Fourth Circuits, uphold the application of the prospective waiver doctrine to this kind of scheme to evade state law. And I submit that the decision below is correct, unless your honors have some other questions. That concludes my remarks. Thank you. Thank you, counsel. Any rebuttal? All right. May I proceed? You may. I think it's clear from opposing counsel's arguments that we're getting into the merits, and all of his arguments are getting into the merits, as opposed to challenges that are specifically directed to the delegation provision. Again, there's nothing unusual or unique about the delegation provision. It allows the arbitrator to entertain challenges of any sort of law, whether it be Illinois law, constitutional law, whatever the case may be. And the reference that was made by opposing counsel with regard to the, I think he was referring to the Second Circuit Gingras case, the Second Circuit made it clear after that case that the effective vindication doctrine is limited to the protection of federal statutory rights. And that was in the doctor's association case. And do you have that citation? I do. That would be 794F appendix 91 at 94. 794F appendix what did you say? I'm sorry. 91, and then the pinpoint citing. So it's an unpublished decision? That is correct. It was an unpublished decision that you are representing that limits the reading of the Second Circuit? Well, Your Honor, I would also say, I would also look to Supreme Court precedent on this issue. In Italian colors, it was in that case, while the district court tried to not pay attention to Justice Kagan's explanation of effective vindication doctrine in her dissent, the majority in Italian colors described the effective vindication doctrine as judge made exception to the FAA, which serves to harmonize competing federal policies by allowing courts to invalidate our agreements that prevent the effective vindication of a federal statutory right. The other cases. Are we going to address footnote five, though, that came after Italian colors in Viking Rivers cruise? Yes, Your Honor. In that case, again, the majority held in that case that the plaintiff's claims that were under California law could be submitted to arbitration. So in that case, if the Supreme Court was applying the effective vindication doctrine and applying it to state law claims, then it would have denied the motion to compel arbitration and would have allowed those claims to proceed forward in the court. That's not what transpired there. So the holding in Viking River has nothing to do with the effective vindication doctrine. And as I mentioned earlier, in Rogers-Rozier, this court noted that the cited the footnote five of Viking River for a proposition that had nothing to do with overruling the effective vindication doctrine. Not overruling the effective vindication doctrine.  I'm more so asking, did the footnote stretch the effective vindication doctrine? And that's what I meant to say, Your Honor, by overruling. It was not this huge sea change to extend the effective vindication doctrine beyond protecting just federal statutory rights, which is the FAA's concern here, and extending it to state statutory rights. The other citations that plaintiff's counsel was referring to, those cases involved loan agreements that had a governing law provision that only allowed for the application of tribal law. They didn't allow for the application of federal law. And that is why the effective vindication doctrine was applied in those instances, because there was a prohibition on applying federal law. Again, here there's been no sort of challenge of a specific nature to the delegation provisions. It's been overall a challenge to the loan agreements as a whole or the arbitration agreements as a whole. In Jackson v. Payday, which was referenced by plaintiff's counsel, that too was a case in which you had a situation that involved a nonexistent tribal arbitration program. So what they called for was an unfair forum, basically a nonexistent arbitration that was going to be operated by the tribe. Nothing to be said about operated by the tribe, but the actual forum didn't exist. Here what we have is a fair forum with the AAA. We have the largest nation's consumer arbitration administrator, a fair forum. I see my time's up. If there's no more questions, then I'll stop my time. Thank you. And thank you both for appearing today. The court will take the case under advisement. Thank you.